UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CASSANDRA K. GAINES, ESQ.,

    Plaintiff,

v.                                            Case No. 18-C-898

SCHNEIDER NATIONAL INC.,

    Defendant.

---

**DECISION AND ORDER GRANTING MOTION TO DISMISS**

---

Plaintiff Cassandra K. Gaines, Esq. filed this action against her former employer, Defendant Schneider National Inc., claiming wrongful discharge under Wisconsin law. This court has diversity jurisdiction based upon 28 U.S.C. § 1332. Presently before the court is Schneider's motion to dismiss Gaines' amended complaint. Schneider contends Gaines has failed to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Schneider's motion will be granted and the case will be dismissed.

**BACKGROUND**

On April 4, 2016, Schneider hired Gaines as Associate General Counsel of Risk Management. Her job duties included engaging in the practice of law in the State of Wisconsin. In approximately February of 2018, Paul Kardish, Schneider's General Counsel and Gaines' supervisor, presented Gaines with a document titled "Confidentiality Agreement," and Gaines executed the document. Kardish also presented Gaines with a document titled "Non-Compete and No-Solicitation Agreement." ECF No. 7-1. The agreement provides, in relevant part:

**Post-Employment Non-Competition.**

(a) You agree that you will not, without the written consent of Schneider, provide Restricted Services (defined below) anywhere in the Restricted Territory (defined below) to any of the following competitors of Schneider at any time during the twenty-four (24) month period immediately following the date of termination of your employment with us: J.B. Hunt Transport Services, Inc.; Swift Transportation Co., Inc.; Knight Transportation, Inc.; Knight-Swift Transportation Holdings, Inc.; Werner Enterprises; C.H. Robinson Worldwide, Inc.; Hub Group, Inc.; XPO Logistics, Inc.; Landstar System, Inc.; Kenan Advantage Group, Inc.; Quality Distribution, Inc.; Interstate Distributor Inc.; Heartland Express Inc.; Echo Global Logistics, Inc., any of their successors, affiliates, resulting merger companies, subcontractors, or wholly-owned businesses, to the extent any such entity provides products or services of the type provided by Schneider during the twelve (12) month period immediately prior to the date of termination.

(b) Definition of Restricted Services. The term "Restricted Services" means duties and functions of the type you performed for Schneider during the twelve (12) month period immediately prior to the date of termination.

(c) Definition of Restricted Territory. The term "Territory" means the geographic area that you serviced on behalf of Schneider during the twelve (12) month period immediately prior to the date of termination.

*Id.* at 2.

In April 2018, Kardish told Gaines to execute the agreement. Gaines responded that she would not sign the agreement, explaining that lawyers are not permitted to sign non-compete agreements under the rules of ethics. Kardish informed Gaines that other attorneys in the office signed the non-compete and no-solicitation agreement and that he would have had to terminate the employment of these lawyers had they not executed the agreement.

On April 25, 2018, Kardish met with Gaines and advised that her execution of the non-compete and no-solicitation agreement was a condition of her continued employment at Schneider. At the meeting, Gaines told Kardish she was ethically prohibited from executing and entering into the agreement under Wisconsin's rules of ethics or aiding in his violation of the rules of ethics.

2

Kardish then informed Gaines that if she did not execute the agreement, she would be terminated. Gaines responded that she would not sign the document, and Kardish fired her. At the end of the meeting, Gaines told her co-workers, including the human resources director, that Kardish had terminated her employment because she refused to sign the non-compete based on her belief that it violated the ethics rules governing lawyers in Wisconsin.

**LEGAL STANDARD**

In considering a motion to dismiss, the court construes all allegations in the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011). To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and her statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he plausibility standard is not

3

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Gaines, an at-will employee for Schenider, asserts she was terminated for refusing to sign the non-compete and no-solicitation agreement. The employment-at-will doctrine provides that an employer can discharge an at-will employee "for good cause, for no cause and even for cause morally wrong" without liability. *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 112, 579 N.W.2d 217 (1998). The Wisconsin Supreme Court adopted a narrow public policy exception to the employment-at-will doctrine, which allows an at-will employee to assert a claim against her employer for wrongful termination if "the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 572–73, 335 N.W.2d 834 (1983). That is, the public policy exception allows at-will employees to bring a wrongful discharge claim "if they are fired for fulfilling, or refusing to violate, a fundamental, well-defined public policy or an affirmative legal obligation established by existing law." *Bammert v. Don's Super Valu, Inc.*, 2002 WI 85, ¶ 3, 254 Wis. 2d 347, 646 N.W.2d 365.

In her amended complaint, Gaines alleges the Wisconsin Rules of Professional Conduct, WI SCR 20:5.6 and 20:8.4 in particular, embody the strong public policy of the state of Wisconsin and claims her refusal to violate these rules of ethics resulted in Schneider terminating her employment. Supreme Court Rule 20:5.6 provides, "A lawyer shall not participate in offering or making . . . a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement." SCR 20:5.6(a). SCR 20:8.4 states that it "is professional misconduct for

4

a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." SCR 20:8.4(a).

Schneider argues that the Rules of Professional Conduct do not trigger the public policy exception to the employment-at-will doctrine because they are not constitutional, statutory, or administrative provisions. Alternatively, Schneider asserts that the narrow cause of action for wrongful discharge does not encompass the discharge of an at-will employee for failing to sign a non-disclosure and non-compete agreement.

Gaines' claim raises novel questions under Wisconsin law. As an initial matter, the court must consider whether Wisconsin's Rules of Professional Conduct can be the basis of a wrongful discharge claim as a public policy exception to the employment-at-will doctrine. "In a diversity case, a federal court must apply the applicable state's law as enunciated by the highest state court or otherwise by the intermediate appellate courts of the state." *PNC Bank, N.A. v. Van Hoornaar*, 44 F. Supp. 3d 846, 854 (E.D. Wis. 2014) (citing *Kutsugeras v. AVCO Corp.*, 973 F.2d 1341, 1346 (7th Cir. 1992); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Seventh Circuit has cautioned district courts "sitting in diversity . . . to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state." *Dausch v. Rykse*, 52 F.3d 1425, 1438 (7th Cir. 1994) (citations omitted).

Wisconsin first recognized the narrow public policy exception to the employment-at-will doctrine in *Brockmeyer*. The exception permits an at-will employee to assert a cause of action "for wrongful discharge when the discharge is contrary to a fundamental and well defined public policy as evidenced by existing law." *Brockmeyer*, 113 Wis. 2d at 572–73. The court believed that a narrow public policy exception balanced the interests of the employer, the employee, and the public:

5

> Employee job security interests are safeguarded against employer actions that undermine fundamental policy preferences. Employers retain sufficient flexibility to make needed personnel decisions in order to adapt to changing economic conditions. Society also benefits from our holding in a number of ways. A more stable job market is achieved. Well-established public policies are advanced. Finally, the public is protected against frivolous lawsuits since courts will be able to screen cases on motions to dismiss for failure to state a claim or for summary judgment if the discharged employee cannot allege a clear expression of public policy.

*Id.* at 574.

Although the court found that such an exception was appropriate, it believed it was necessary to be "precise" about the contours of the exception. *Id.* at 573. The court accordingly expressed certain guidelines a court could use to gauge whether a discharge violates public policy:

> 1. An employer is liable for wrongful discharge if it discharges an employee for refusing to violate a constitutional or statutory provision. Employers will be held liable for those terminations that effectuate an unlawful end.
>
> 2. The discharge must clearly contravene the public welfare and gravely violate paramount requirements of public interest.
>
> 3. An employer is liable for wrongful discharge if the employer discharges an employee for conduct that is "consistent with a clear and compelling public policy."
>
> 4. An employer is not liable for wrongful discharge merely because the employee's conduct precipitating the discharge was praiseworthy or the public derived some benefit from it.

*Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 42–43, 384 N.W.2d 325 (1986) (citing *Brockmeyer*, 113 Wis. 2d at 573–74). In other words, Wisconsin law requires that, to state a claim for wrongful discharge, a plaintiff must identify a constitutional or statutory provision that clearly articulates a fundamental and well-defined public policy. *Brockmeyer*, 113 Wis. 2d at 574. From there, the court subsequently extended the definition of "existing law" in *Winkelman v. Beloit Memorial Hospital*, 168 Wis. 2d 12, 483 N.W.2d 211 (1992). There, the court concluded that,

6

"where a fundamental and well-defined public policy is evidenced by an administrative rule, a discharge for refusal to violate that public policy is actionable." *Id.* at 22. The court reasoned that "an employer must not be allowed to discharge an employee for the employee's refusal to violate a formally stated, fundamental and well-defined public policy which has the effect of law." *Id.*

Since the creation of the exception, the Wisconsin Supreme Court has cautioned against interpreting the exception too broadly. The definition of "existing law" has not been expanded since *Winkelman*. The court has acknowledged that "existing law" does not include case law and that not every "statutory, constitutional, or administrative provision evidences a fundamental and well-defined public policy." *Kempfer v. Automated Finishing, Inc.*, 211 Wis. 2d 100, 112, 564 N.W.2d 692 (1997). The Wisconsin Supreme Court has been clear: "If a public policy is not contained in a statutory, constitutional, or administrative provision, it cannot fall under the public policy exception to the employee-at-will doctrine." *Id.* Because expansions of the exception have "been few and limited in nature," *Bammert*, 254 Wis. 2d 347, ¶ 16, the Wisconsin Court of Appeals has indicated that the Rules of Professional Conduct cannot evidence public policy as required to meet the narrow exception to the employment-at-will doctrine considered by *Brockmeyer* and its progeny, albeit in unpublished decisions. *See Kelly v. Western Wis. Legal Servs.*, 125 Wis. 2d 565, 371 N.W.2d 428 (Ct. App. 1985) ("The ethical considerations in SCR ch. 20 are not founded in the Constitution or the statutes. If the ethical considerations impose a duty, it is not the type contemplated by the *Brockmeyer* court as actionable."); *Creedy v. Brynelson*, 216 Wis. 2d 384, 576 N.W.2d 89, 1998 WL 3415, at *4 n.6 (Ct. App. 1998) ("We assume the 'extension' [plaintiff] seeks is a broadening of the rule of *Brockmeyer* . . . , which recognizes a limited public-policy-based exception to the Wisconsin rule of employment-at-will where the employee is fired for refusing to violate a state law

or regulation. The ethical considerations raised in SCR chapter 20 are not grounded on the constitution or statutes as *Brockmeyer* requires." (citing *Brockmeyer*, 113 Wis. 2d at 573–74; *Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 146, 396 N.W.2d 167 (1986))).

Regardless of the public policy considerations Gaines asserts are associated with SCR 20:5.6 and 20:8.4, the Supreme Court has not expanded the exception beyond public policy evidenced in the constitution, a statute, or an administrative rule. It is possible that the Wisconsin Supreme Court would expand the public policy exception to allow a cause of action for public policy evidenced in the Wisconsin Rules of Professional Conduct, as attorneys may be subject to professional discipline for violating them. But these rules do not have the effect of law that constitutional, statutory, and administrative provisions have. SCR Chapter 20 preamble [11] ("To the extent that lawyers meet the obligations of their professional calling, the occasion for government regulation is obviated."). "Federal courts are to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state." *Brown v. Pick'N Save Food Stores*, 138 F. Supp. 2d 1133, 1144 (E.D. Wis. 2001) (citing *King*, 113 F.3d at 97); *see also Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1333 (7th Cir. 1985) ("Because we are unable to predict what the Wisconsin courts would do in such a case, and because of the substantial policy considerations involved, we hesitate to expand Wisconsin law to allow these . . . claims in the absence of a more direct indication of intent by the state courts or legislature."). The Wisconsin Supreme Court has made clear that only three sources—constitutional, statutory, and administrative provisions—can evidence fundamental and well-defined public policy. Gaines has not asserted her discharge is contrary to a public policy contained in a statutory, constitutional, or administrative provision.

More specifically, as applied to the allegations in this case, Gaines has failed to articulate a clear public policy that the termination of her employment violates. Even if as a general matter, requiring an employee to violate Wisconsin's Rules of Professional Responsibility for Lawyers could fall within the public policy exception to the State's employment-at-will doctrine, SCR 20:5.6 does not clearly articulate the kind of "fundamental and well-defined public policy" that *Brockmeyer* requires. 113 Wis. 2d at 574. Gaines' discharge for refusing to sign the non-compete agreement in this case does not "contravene the public welfare and gravely violate the paramount requirements of public interest." *Wandry*, 129 Wis. 2d at 43. This is because the application of SCR 20:5.6 to the kind of non-compete agreement that Schneider required of its in-house counsel is unclear on its face and questionable as to its purpose and effect.

As one commentator has noted, "[t]here are compelling reasons for treating in-house counsel differently under Rule 5.6(a), and the early history of the Rule suggests that it was designed for the law-firm context." Kevin D. Horvitz, *An Unreasonable Ban On Reasonable Competition: The Legal Profession's Protectionist Stance Against Noncompete Agreements Binding In-House Counsel*, 65 DUKE L.J. 1007, 1028 (2016). In-house counsel for corporate employers play a significantly different role than outside counsel. This is because in-house counsel provide both business and legal advice. As a result, the ethical rules on confidentiality that apply to all lawyers are inadequate to protect the corporate employer's legitimate interests. *Id.* at 1032–33. In any event, SCR 20:5.6 does not articulate the kind of clear and compelling public policy that *Brockmeyer* held was required to prevent an employer from terminating an employee who served at the will of both the employer and employee. For this reason, as well, Gaines has failed to state a claim upon which relief can be granted and her amended complaint must be dismissed.

9

## CONCLUSION

For the foregoing reasons, Schneider's motion to dismiss (ECF No. 12) is **GRANTED** and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this  24th  day of October, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court